# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GINA NEEDHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-cv-8230 |
| ) | |
| ROBERT A. McDONALD, SECRETARY ) | Hon. Sharon Johnson Coleman |
| OF VETERANS AFFAIRS, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

24563794.4

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

FACTUAL BACKGROUND................................................................................................2

    A.    Gina Needham Was an Exceptional Nurse.................................................2

    B.    The VA Knew Needham Suffered From Depression..................................2

    C.    Needham is arrested. ...................................................................................2

    D.    The VA Requests And Receives A Psychological Evaluation Confirming Needham's Depression And Recommending Accommodations For Her Return To Work. ...............................................3

    E.    The VA Fails To Address The Recommendations And Discharges Needham. ....................................................................................................4

ARGUMENT..........................................................................................................................5

I.    A DISPUTE OF MATERIAL FACT EXISTS AS TO WHETHER NEEDHAM WAS A "QUALIFIED INDIVIDUAL" ........................................6

    A.    Needham Was Able To Perform The Essential Functions Of An ER Nurse. ..........................................................................................................6

    B.    There Are Disputes of Material Fact Regarding Whether Needham Was Not A Qualified Individual When She Was Terminated...........................6

II.    THERE ARE DISPUTED MATERIAL FACTS AS TO WHETHER REASONABLE ACCOMODATIONS WERE REQUESTED, OFFERED AND REJECTED..................................................................................................9

    A.    Dr. Aghakhan Requested Reasonable Accommodations for Needham............9

    B.    The VA Failed To Offer a Reasonable Accommodation..................................12

    C.    Needham Did Not Reject The Last Chance Agreement. ...................................13

III.    THE TIMING OF NEEDHAM'S TERMINATION JUST DAYS AFTER DR. AGHAKHAN DIAGNOSED HER DEPRESSION CREATES A MATERIAL FACTUAL DISPUTE REGARDING WHY THE VA FIRED HER..............................................................................................................................13

IV.    CONCLUSION ................................................................................................15

**INTRODUCTION**

Plaintiff Gina Needham was an experienced nurse employed in the emergency department at the Lovell Federal Health Care Center ("Lovell") operated by the U.S. Department of Veterans Affairs (the "VA"). Needham's performance at the VA was consistently ranked satisfactory or higher. She had never been disciplined.

The VA fired Needham on March 14, 2013 for "off duty conduct unbecoming a registered nurse." The referenced conduct was allegedly Needham's arrest five months earlier, on October 12, 2012, for possession of cocaine and drug paraphernalia, and for driving under the influence. The VA claims the arrest rendered Needham unqualified for her position because it violated VA employment policies.

After the arrest the VA made a ham-handed attempt to force Needham to quit. It then reversed course and asked her to undergo a psychological evaluation by VA staff, which she did. The evaluation report, dated December 14, 2012, stated that Needham suffered from Major Depressive Disorder and recommended that she be reintegrated to work gradually starting with limited duties, such as answering phones and paper work, before resuming active patient care.

Just days after the psychological report, the VA issued a proposed discharge letter to Needham. However, the VA did not proceed with her termination at that time. Instead, the VA offered Needham a last chance agreement to *continue her employment*. Although Needham had volunteered to enter such an agreement, the agreement offered was onerous, imposing conditions exceeding the collective bargaining agreement and VA Handbook. The VA unilaterally ended negotiations over the agreement's terms and fired Needham.

Material factual disputes exist as to whether Needham was not a qualified individual, as the VA asserts, whether reasonable accommodations were requested, which the VA denies, and

1

whether Needham rejected the last chance agreement, as the VA argues. These factual disputes, as more fully described below, require denial of the VA's motion for summary judgment.

## FACTUAL BACKGROUND

### A. Gina Needham Was an Exceptional Nurse.

Needham was already an experienced nurse when she started working in Lovell's Emergency Department ("ER") on April 27, 2008 (Ptf's L. R. 56.1(b)(3)(C) St. of Add'l Facts ("SAF") ¶¶ 1-2.) Jim Miller, Needham's supervisor, hired her because he "was impressed by her work ethic, decision making, and nursing skills." (SAF ¶ 3.) Needham's co-workers described her as an "exceptional nurse." (*Id.*) Needham's performance reviews consistently ranked her as satisfactory or higher. (*Id.*) The VA had never disciplined Needham. (*Id.*)

### B. The VA Knew Needham Suffered From Depression.

Needham has suffered from depression since childhood. (SAF ¶ 7.) The VA was aware of her condition. (SAF ¶¶ 5, 7, 21-24.) Needham requested and received medical leave in June 2012 to seek treatment for depression. (SAF ¶ 5.) She returned to work in August 2012. (SAF ¶¶ 5-6.) She did not request an additional accommodation from the VA because she "was afraid to ask for anything else" and "had already asked for time off and [ ] didn't want to be a bother." (SAF ¶ 6.)

On October 6, 2012, while at work, Needham learned that her bank account was overdrawn. (SAF ¶ 9.) She received permission to leave work to replenish her account. (*Id.*) When she returned to work later that day, she cried uncontrollably and told her co-worker Myna Shegog "I wish I was dead," and "I wish a car would hit me." (*Id.*) The VA had Needham involuntarily committed for psychiatric evaluation that day. (SAF ¶ 10.)

### C. Needham is arrested.

Just days later, on October 11, 2012, Needham attempted suicide by overdosing while off duty. (SAF ¶ 13.) She survived, and tried again to overdose the next day (still off duty). (*Id.*) On

2

October 12, after taking Xanax, she agreed to meet her husband at a local parking lot. (SAF ¶ 14.) On her way, she was pulled over by police and charged with possession of cocaine and drug paraphernalia, and having more than one driver's license. (SAF ¶ 15.)

On October 19, 2012, Miller and a member of Lovell's Human Resources Department called Needham. (SAF ¶ 16.) Miller told her that he knew about the arrest and gave her an ultimatum: quit or be fired. (*Id.*) On October 31, the union filed a grievance on Needham's behalf because Miller's ultimatum violated the collective bargaining agreement. (SAF ¶ 17.)

> **D.    The VA Requests And Receives A Psychological Evaluation Confirming Needham's Depression And Recommending Accommodations For Her Return To Work.**

On October 31, 2012, Patrick Sullivan, Lovell's director, asked Dr. Mark Aghakhan, a Lovell psychologist, to complete a psychological examination of Needham with Needham's consent. (SAF ¶ 18.) Dr. Aghakhan's report, dated December 14, 2012, concluded that Needham met the diagnostic criteria for Major Depressive Disorder, Recurrent, Moderate. (SAF ¶ 24.)

While the VA claims that the report concluded Needham was "unfit for duty" (Dkt. 72 ¶ 31), it contains no such statement. Just the opposite – it describes the circumstances under which Needham can return to work. (SAF ¶ 25.) Dr. Aghakhan recommended the following:

   a. Needham was "considered not ready to resume work at the present time," but "can be considered being in the early stages of mental health recovery."

   b. Needham's condition could improve to a "mild issue" in two or three months if she continued taking psychotropic medication and receiving psychological treatment, making it reasonably possible for her to return to work.

   c. If and when Needham returned to work, Dr. Aghakhan recommended that she be gradually reintegrated by answering phones and handling paper work before providing clinical care.

   d. In the alternative, Dr. Aghakhan recommended that Needham receive another screening before returning to work.

3

24563794.4

(*Id.*) Notably, the report credits Miller with suggesting that any return to work be gradual and start with answering phones and doing paper work. (*Id.*)

### E. The VA Fails To Address The Recommendations And Discharges Needham.

On December 20, 2012, six days after Dr. Aghakhan's report, the VA issued a proposed discharge letter to Needham. (SAF ¶ 26.) The VA then sent her a notice of proposed discharge on January 8, 2013. (SAF ¶ 27.) The notice described the "Charge" as "off-duty conduct unbecoming a registered nurse." (*Id.*) The "Specification" of the charge referred to Needham's October 12, 2012 arrest. (*Id.*) It did not refer to any other conduct on or off duty. (*Id.*)

Needham responded to the proposed discharge in a January 24, 2013 letter offering to "enter into a last chance agreement to prove my commitment to full recovery, and to continuing being an excellent and caring nurse." (SAF ¶ 29.)

On March 8, 2013, the VA offered Needham a Last Chance and Abeyance Agreement. (SAF ¶ 30.) Section 4 of the agreement provided that "the employee must show fully satisfactory attendance, conduct and performance at the work site during the period of this agreement. . . . Every unscheduled absence must be supported by acceptable documentation establishing incapacity and inability to report for work and absences are within reason." (*Id.*) In addition, the agreement provided that "[i]f all the foregoing criteria are met, the action will be cancelled at the end of the three (3) year period. Failure to meet any of these criteria during the three (3) year period will result in your immediate discharge." (*Id.*)

The last chance agreement did not address any of Dr. Aghakhan's recommendations. Instead, it imposed burdens on Needham that violated the VA Handbook and the collective bargaining agreement. (SAF ¶ 31.) These burdens included the attendance and performance goals, and the length of the probationary period. (*Id.*) The union representative, Abass Wane, objected to the VA, which refused to modify the agreement's terms. (SAF ¶¶ 31-32.) While the

4

VA's Motion asserts that Needham rejected the agreement, the evidence does not support this conclusion. (SAF ¶ 34.) On the contrary, the evidence shows that on March 13, Wane asked the VA to reconsider its position. (SAF ¶ 33.)

Rather than reconsider or discuss the matter further, the next day the VA sent a discharge letter to Needham terminating her employment. (SAF ¶ 33.) The basis for the discharge was off duty conduct unbecoming a Registered Nurse, meaning the October 12 arrest – *i.e.*, the same basis stated in the January proposed discharge. (SAF ¶¶ 27, 33.) The discharge letter did not say that gambling on duty or any other activity was the grounds for Needham's termination. (SAF ¶ 33) On the contrary, it stated that the "reason stated in the notice of proposed discharge do [sic] not involve a question of professional conduct or competence." (*Id.*)

## ARGUMENT

Needham asserts claims for failure to accommodate and disability discrimination under the Rehabilitation Act of 1973, § 504(a).[1] The VA has moved for summary judgment on both. To establish a claim for failure to accommodate Needham must show that "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). To establish a claim for discrimination Needham must show that (1) she is disabled; (2) she is qualified to perform the essential functions of her job with or without a reasonable accommodation; and (3) she suffered from an adverse employment decision because of her disability. *Cleveland v. Prairie State Coll.*, 208 F. Supp.2d 967, 979 (N.D. Ill. 2002).

---

[1] Employment claims under the Act are governed by the standards applicable to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 et seq. *Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004) (citing 29 U.S.C. § 794(d)).

5

The VA concedes that some of these elements are satisfied. The VA does not dispute that Needham suffered from a disability (depression) or that it knew of her disability before terminating her. Rather, the VA argues that Needham was not a "qualified individual," did not seek an accommodation, and was not terminated because of her disability. As set forth below, disputed material facts regarding each of these arguments require denial of the VA's Motion.

**I.  A DISPUTE OF MATERIAL FACT EXISTS AS TO WHETHER NEEDHAM WAS A "QUALIFIED INDIVIDUAL"**

Both claims require that Needham be a "qualified individual." To be a qualified individual, Needham must establish that: "1) she satisfied the prerequisites for the position, i.e. proper training, skills, education and experience; and 2) she could perform the essential functions of the position with or without reasonable accommodation." *Cleveland*, 208 F. Supp.2d at 975. Whether the plaintiff is a qualified individual is "'determined as of the time of the employment decision.'" *Id.* (quoting *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) (employee unable to return to work in any capacity at any time was not "qualified individual.")).

While the VA claims that Needham was not a qualified individual, its conduct and arguments raise serious factual disputes that require denial of summary judgment on the issue.

**A.  Needham Was Able To Perform The Essential Functions Of An ER Nurse.**

The VA does not dispute that Needham had the proper training, skills, and experience to perform her duties as a registered nurse, or that she was capable of performing her essential job functions. The VA's discharge letter stated that the "reason stated in the notice of proposed discharge do [sic] not involve a question of professional conduct or competence." (SAF ¶ 33.)

**B.  There Are Disputes of Material Fact Regarding Whether Needham Was Not A Qualified Individual When She Was Terminated.**

The VA claims that Needham was not a "qualified individual" because she engaged in conduct unbecoming a nurse in violation of VA's employment policies. (Dkt. 71 pp. 8-10.) The

6

24563794.4

VA has been a moving target regarding what constitutes Needham's "conduct unbecoming." When Needham was fired, the VA described that conduct as her arrest on October 12, 2012. (SAF ¶¶ 27, 33.) On summary judgment, the VA claims that the disqualifying conduct was gambling at work and smoking crack cocaine while off duty. (Dkt. 71 pp. 8-10.)

While there is evidence that the VA knew of Needham's gambling (SAF ¶¶ 5, 24), the VA offers no evidence supporting its claim that gambling at work rendered Needham unqualified when it terminated her in March 2013. Indeed, the VA claims it did not even know about Needham's gambling before it fired her. (Dkt. 72, Ex. E at GN0047-48 ¶ 5; Dkt. 72, Ex. N at GN0053 ¶ 6.) If that were the case, gambling could not have rendered Needham unqualified.

None of the VA's contemporaneous documents state that Needham's discharge is based on gambling at work. The VA's January 8, 2014 Proposed Discharge and its March 13, 2012 Discharge and summary of Douglas factors refer to Needham's arrest as the offense, with no mention of gambling. (Dkt. 72, Ex. C, Att. 6 and 8.) Needham was never disciplined or reprimanded for gambling. (SAF ¶¶ 3, 33; Dkt. 72, Ex. C, Att. 8 at GN0090 ¶ 3.) The VA never referred to gambling in Needham's performance reviews. (SAF ¶ 3.)

The discharge documents refer to Needham's arrest for drug possession, not drug use. (SAF ¶¶ 27, 33.) Similarly, the VA did not cite to or even know of Needham's use of crack cocaine when it terminated her. Even the arrest report refers to possession. (Dkt. 72 ¶ 25.) Needham had passed drug screenings during her employment. (SAF ¶ 19.)

The fact that the VA now finds it necessary to embellish and alter its reasons for termination raises questions as to whether Needham's arrest in October 2012 rendered her unqualified. If the arrest was sufficient, there would be no reason for the VA to rely on matters that it did not consider when it terminated Needham. This suggests that the VA knows that it

7

needs other reasons to justify its actions *Cleveland*, 208 F. Supp.2d at 977 (denying employer's argument on summary judgment that employee was not "qualified individual" based on evidence that employer may not have known before the employment decision was made); *see also O'Neil v. City of New Albany*, 293 F.3d 998, 1006 (7th Cir. 2002) (denying employer's motion for summary judgment where it gave plaintiff one reason for not hiring him, but later used a different justification).

    The inference that the arrest did not disqualify Needham is further supported by the fact that the VA did not terminate her immediately after the arrest, which it learned of no later than October 19, 2012. (SAF ¶ 16.) Instead, the VA flipped and flopped. First, it tried to force her to quit. Then it reversed course. Rather than proceed with proper termination procedures, the VA asked Needham to undergo a psychological evaluation. There would be no reason to seek a psychological evaluation if the arrest rendered her unqualified. The VA then offered to *continue Needham's employment* under a last chance agreement. The fact that the VA was willing to allow her to return to her job – albeit, stripped of her collectively bargained rights – refutes the conclusion that she was unqualified for that job once she was arrested in October 2012.

    Needham's situation is fundamentally different from that of the Police Chief in *Budde v. Kane County. Forest Preserve.* 603 F. Supp.2d 1136 (N.D. Ill. 2009), aff'd 597 F.3d 860, 862 (7th Cir. 2010). Unlike Chief Budde, Needham was not the head of the VA who expected to be "held to a higher standard." *Budde*, 603 F. Supp.2d at 1142. Unlike Chief Budde, Needham was not a visible public figure who caused a crash driving while intoxicated and sent two people to the hospital. *Budde*, 597 F.3d at 862. And unlike Chief Budde, Needham's arrest did not result in her being unable to perform an essential job function – driving – as a result of losing her license. *Id.* at 863. Budde's termination was not based on just a single violation of workplace rules.

Unlike the employees in the other cases cited by the VA, Needham is not arguing that her allegedly disqualifying misconduct should be excused because of her disability. *See Palmer v. Cir. Ct. of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997) (employee was fired because she "threatened to kill another employee," not because of her mental illness); *Pernice v. City of Chi.*, 237 F.3d 783, 786-87 (7th Cir. 2001) (plaintiff's discharge did not violate the ADA where plaintiff argued his drug dependence compelled his drug possession); *Spath v. Hayes Wheels Int'l Ind., Inc.*, 211 F.3d 392, 395 n.5 (7th Cir. 2000) (employer did not violate ADA by firing plaintiff whose disability caused him to lie).

Rather, Needham argues that the arrest does not permit the Court to find *as a matter of law* that she was not a qualified individual. Based on the VA's offer of continued employment, as well as its make-weight arguments now, genuine issues of material fact as to whether Needham was a "qualified individual" require denial of summary judgment on this issue.

## II. THERE ARE DISPUTED MATERIAL FACTS AS TO WHETHER REASONABLE ACCOMODATIONS WERE REQUESTED, OFFERED AND REJECTED.

The VA does not dispute that Needham suffers from a disability, depression, and that it was aware of her disability. While the VA disputes that she was a qualified individual, for the reasons stated above that does not support summary judgment on either claim. The final element of a failure to accommodate claim is the employer's failure to reasonably accommodate the employee's disability. As explained below, disputed material facts foreclose summary judgment on each of the grounds offered by the VA regarding this final element.

### A. Dr. Aghakhan Requested Reasonable Accommodations for Needham.

The VA says it had no obligation to engage in the interactive process to reach a reasonable accommodation because Needham never requested an accommodation. (Dkt. 71 pp. 10.) This ignores Dr. Aghakhan's request for reasonable accommodations on her behalf.

9

Dr. Aghakhan's report confirmed that Needham met the diagnostic criteria for "Major Depressive Disorder, Recurrent, Moderate" (SAF ¶ 24). He stated she was "not ready to resume work at the present time," but was "in the early stages of mental health recovery," and could return to work within two to three months.[2] (SAF ¶ 25.) Dr. Aghakhan requested that Needham be gradually reintegrated by answering phones and paper work before providing patient care, or that she be re-screened prior to beginning work again. (*Id.*)

The Seventh Circuit has recognized that where, as here, an employee suffers from a mental illness, accommodations can be requested on her behalf by another. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285-86 (7th Cir. 1996). In *Bultemeyer* the employee's psychiatrist recommended that the employer provide a less stressful work assignment due in part to the employee's mental illness. *Id.* at 1282. The court found that while the employee was unable to articulate his request for an accommodation, "through [his psychiatrist] he did communicate that he wanted a position that was 'less stressful.'" *Id.* The court held that the psychiatrist's recommendation constituted a request for accommodation, noting that "an understanding of mental illness is central to understanding Bultemeyer's request for accommodation and his complaint." *Id.* at 1284.

*Bultemeyer* controls here. Dr. Aghakhan's report put the VA on notice that Needham suffered from a mental illness and requested reasonable accommodations on her behalf. The VA was then obligated to engage in an interactive process to determine if a reasonable accommodation could be reached. *Id.* at 1285; *see also Erickson v. Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ.*, 1997 WL 548030, at *4-7 (N.D. Ill. Sept. 2, 1997) (employer

---

[2] The Seventh Circuit has recognized that an employer's denial of a reasonable request for leave may serve as grounds for a failure to accommodate claim. *See Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998).

10

failed to engage in interactive process with employee who did not request accommodation where employer knew employee was suffering from emotional distress due to fertility treatment).

The VA attempts to distinguish *Bultemeyer* on grounds that "[t]here is no evidence that Needham could not request an accommodation, and her psychiatrist cleared Needham to return to work without restrictions." (Dkt. 71 p. 11 n.5). In fact, Needham testified that upon returning to work from medical leave in August 2012, she "was afraid to ask for anything else" because she "had already asked for time off and . . . didn't want to be a bother." (SAF ¶ 6.) The VA ignores this testimony. And her own psychiatrist never said she could return without restrictions. He merely cleared her to return. (Dkt. 72 at Ex. A, Att. 4; Ex. C, Att. 2; and Ex. K, Att. 4.) The VA does not even try to explain why it now relies upon those letters and ignores the recommendations of its own psychologist, Dr. Aghakhan. The letters are compatible: Needham could return to work with the accommodations recommended by Dr. Aghakhan.

The VA likewise cannot justify its failure to accommodate by arguing that it had no duty to do so after Needham's arrest because she was not a "qualified individual." (Dkt. 71 p. 11). This presumes that the arrest rendered Needham unqualified as a matter of law. However, as discussed in Argument I.B. above, issues of material fact exist as to whether the arrest rendered her unqualified. In the case law cited by the VA, it had been determined that the violation rendered the employee unqualified. *See Cloe v. City of Ind.*, 712 F.3d 1171, 1179 (7th Cir. 2013) (employer's firing of employee did not violate ADA where employee made errors on the job that rendered her unqualified, and employee did not ask for accommodation); *Tate v. Ancell*, 551 Appx. 877, 886 (7th Cir. 2014) (employee waived argument that his rule violation justified his discipline, and employee did not request accommodation for sleep apnea until disciplinary proceeding); *Ortiz v. Bd. of Educ. of City of Chi.*, 2014 WL 3502640, at *3 (N.D. Ill. July 14,

11

2014) (failure to accommodate did not excuse employee's misconduct reporting to work in public school while intoxicated, carrying alcohol and raw meat).

The other cases cited by the VA do not overcome the obligations imposed by *Bultemeyer*. In *Gittings v. Tredegar Corp.*, 2010 WL 4930998, at *7 (N.D. Ill. Nov. 29, 2010), the District Court reasoned that the plaintiff's request for an accommodation was nothing more than a request to not be terminated. Similarly, in *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996), the Seventh Circuit affirmed summary judgment for the employer because the plaintiff failed to request a sufficiently specific accommodation. By contrast, Dr. Aghakhan made a concrete request for accommodation.

      **B.**    **The VA Failed To Offer a Reasonable Accommodation.**

Knowing that Needham suffered from depression, it was incumbent upon the VA to "be aware of the difficulties, and help the other party determine what specific accommodations are necessary." *Bultemeyer*, 100 F.3d at 1285. The VA was required to do more than make Needham a take-it-or leave it offer. Under the last chance agreement, the VA would allow Needham to return to work only if she forfeited her collective bargaining rights and agreed to the onerous terms. This offer, like the VA's prior "quit or be fired" ultimatum, was non-negotiable.

Here, a reasonable jury could find that the VA's offer of continued employment under the three-year threat of severe discipline, and in violation of the collective bargaining agreement, was not a reasonable accommodation. *See Sears, Roebuck*, 417 F.3d at 803 (holding a jury could find accommodation was unreasonable where employee's use of accommodation – eating in a department store stockroom – could have led to her reprimand); *see also Mudgett v. Centegra Health Sys., Inc.*, 2006 WL 1806390, at *5 (N.D. Ill. June 27, 2006) (plaintiff stated failure to accommodate claim where employer conditioned her continued employment on her taking medication and receiving treatment for illness). The VA's failure to engage in the interactive

12

process establishes a genuine issue of material fact as to whether the VA offered a reasonable accommodation.

### C. Needham Did Not Reject The Last Chance Agreement.

The VA implicitly recognizes its obligations to engage in the interactive process. It likewise implicitly recognized the Dr. Aghakhan requested reasonable accommodations on Needham's behalf. That is why it goes to pains to argue that *Needham* rejected the last chance agreement. (Dkt. 71 pp. 11-12; Dkt. 72 ¶ 37.)

The evidence cited by the VA does not support its conclusion that Needham rejected the agreement. (*See* Ptf's Resp. to Def's St. of Material Facts ¶ 37.) Needham's EEO affidavit stated only that she did not elect to sign the last chance agreement because doing so required her to waive her rights under the collective bargaining agreement. The VA ignores the email from Wane asking the VA to reconsider its position. (SAF ¶ 33.) The VA also ignores Needham's testimony that she would have signed the last chance agreement, and that she believed negotiations with the VA were ongoing until she received notice of her firing. (SAF ¶ 34.)

For all of these reasons, material factual disputes foreclose summary judgment on Needham's claim for failure to accommodate.

### III. THE TIMING OF NEEDHAM'S TERMINATION JUST DAYS AFTER DR. AGHAKHAN DIAGNOSED HER DEPRESSION CREATES A MATERIAL FACTUAL DISPUTE REGARDING WHY THE VA FIRED HER.

The VA's Motion on the discrimination claim must also be denied. The VA concedes that Needham suffers from a disability. As discussed in Argument I.B. above, disputes of material fact foreclose summary judgment on the issue of whether she was a qualified individual. And, as set forth below, there are disputes of material fact regarding whether she suffered an adverse employment decision because of her disability.

13

To defeat summary judgment on this final element of her discrimination claim, Needham must put forth evidence that would permit a reasonable factfinder to determine that her disability caused her discharge. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (Title VII case); *see also Aliferis v. Generations Health Care Network at Oakton Pavillion, LLC*, 2016 WL 4987469, at *5 (N.D. Ill. Sept. 19, 2016) ("The only issue before the Court is whether a reasonable juror could conclude that Aliferis's disability was a 'determining factor' in [employer's] decision to terminate" fellow employee).

The VA contends that the Court can find, as a matter of law, that Needham was terminated because of her gambling and drug use, not her disability. (Dkt. 71 pp. 12-14.) However, as explained in Argument I.B. above, the VA did not offer either justification for her termination when it made that decision. The VA's shifting explanation for Needham's termination raises questions as to whether the stated reason was a pretext for a discriminatory purpose. "Pretext in this context means a lie, specifically a phony reason for some action." *O'Neil*, 293 F.3d at 1005. "Even if the plaintiff's evidence does not compel the conclusion that his employer discriminated against him, if there is a question of fact as to the believability of an employer's purported reasons for an employment decision then at a bare minimum it suffices to defeat the employer's summary judgment motion." *Patmythes v. City of Janesville*, 181 Fed. Appx. 596, 598 (7th Cir. 2006).

Moreover, the timing of the VA's decision to fire Needham strongly suggests that Needham's depression diagnosis motivated the VA to fire her. "By itself, temporal proximity would not normally create an issue of material fact as to causation . . . although it could suffice where the adverse action followed on the heels of the employer's discovery of the employee's

14

disability." *Schwab v. N. Ill. Med. Ctr.*, 42 F. Supp.3d 870, 886 (N.D. Ill. 2014) (internal quotation and citation omitted).

The VA sent a proposed discharge letter to Needham six days after the report stating her depression diagnosis, which was more than two months after her arrest. (SAF ¶¶ 15, 21, 26.) The proximity between confirmation of her diagnosis and the proposed termination establishes a genuine issue of material fact as to whether her disability caused the VA to discharge her. *See Schwab*, 42 F. Supp.2d at 886-87 (denying defendant's motion for summary judgment where plaintiff was fired two days after missing work due to doctor's appointment); *Cf. Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1314-15 (7th Cir. 1989) (one week between complaint and adverse employment action sufficient to establish causal link in Title VII retaliation case); *Lucterhand v. Granite Microsystems, Inc.*, 2007 WL 703400, at *12 (E.D. Wis. Mar. 2, 2007) (plaintiff's termination one month after returning from hospital could lead reasonable jury to conclude plaintiff's leave and need for leave factored into termination).

The VA cites *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 226-27 (7th Cir. 2016), in which there was no evidence that the employer was "dissembling." Here, VA's shifting explanation for Needham's termination renders *David* distinguishable.

In sum, the timing of the VA's decision to terminate Needham in relation to it confirming her depression diagnosis, and its wavering explanations to Needham as to the status of her employment create a genuine issue of material fact as to whether it fired her because of her disability. The VA's motion for summary judgment should be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Gina Needham requests that this Court deny Defendant Robert McDonald's Motion for Summary Judgment.

15

24563794.4

| | |
|---|---|
| June 30, 2017 | Respectfully submitted, |

/s/ *Alexandros Stamatoglou*
One of the Attorneys for Plaintiff

Paula E. Litt
Alexandros Stamatoglou
HONIGMAN MILLER SCHWARTZ AND COHN LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
(312) 701-9300
plitt@honigman.com
astamatoglou@honigman.com

16

## CERTIFICATE OF SERVICE

I, Alexandros Stamatoglou, one of the attorneys for Plaintiff Gina Needham hereby certify that on June 30, 2017, I caused a copy of the attached ***Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment*** to be submitted electronically to the Court's Electronic Case Filing System which generates a Notice of Electronic Filing that constitutes service to all Filing Users under Fed. R. Civ. P. 5(b)(2)(D).

/s/ *Alexandros Stamatoglou*

24563794.4