**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GINA NEEDHAM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-8230 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| ROBERT A. MCDONALD, SECRETARY | ) | |
| OF VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Gina Needham, brings this action against the defendant, Secretary of Veterans Affairs Robert A. McDonald (hereinafter "the VA"), alleging that the VA failed to accommodate her disability and discriminated against her based on her disability in violation of the Rehabilitation Act of 1973. The VA now moves for summary judgment on Needham's claims. For the reasons set forth herein, the VA's motion for summary judgment [70] is denied.

**Background**

The following facts are undisputed unless otherwise noted. Needham worked as a nurse in the Lovell Federal Health Care Center's emergency department from April 27, 2008, until March 22, 2013. Needham's direct supervisor was emergency room nurse manager James Miller. Miller hired Needham because he had worked with her in the past and had been impressed by her work ethic, decision making, and nursing skills.

As an employee at the Lovell Federal Health Care Center, Needham was subject to a code of conduct. As is relevant here, that code of conduct provides that:

> 9. Employees shall protect and conserve Federal property and shall not use it for other than authorized activities.
>
> . . .

12. Employees shall satisfy in good faith their obligations as citizens, including all financial obligations, especially those such as Federal, State, or local taxes—that are imposed by law.

. . .

14. Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in the Standards of ethical conduct. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

In 2010, Needham took approximately a month of leave from the VA in order to participate in a treatment program for dependency on pain medication. Needham did not tell the VA that she had sought treatment for prescription drug dependence, and after her leave she returned to work without restrictions and without requesting an accommodation. At the time of her leave, Miller was under the impression that Needham suffered from emotional problems, but did not receive any documentation concerning a formal diagnosis of her condition.

In 2011, Needham's husband lost his job, her daughter stopped attending school, and Needham began to worry about her family's finances. Needham began to gamble while on duty, seemingly by playing scratch-off games. During the course of her gambling, Needham lost hundreds of thousands of dollars. Needham informed Miller that she had a gambling problem, and he suggested that she take time off from work to seek treatment. In June 2012, Needham requested and received family medical leave and sick leave to seek treatment for depression. Before she could enter a treatment program, however, Needham learned that her mother was terminally ill. Needham therefore spent the remainder of her leave caring for her mother instead of participating in treatment for her gambling addiction. Dr. Robert Baker, Needham's psychiatrist, wrote the VA a letter stating that Needham could return to work on August 2, 2012. Needham did not request any accommodations upon her return to work.

On October 6, 2012, Needham gambled during her shift and overdrew her checking account. She became upset and expressed suicidal thoughts to a coworker. Based on her statements to the coworker, the VA committed Needham to Alexian Brothers Behavioral Health Hospital for a psychiatric evaluation. Needham was discharged two days later. On October 9, 2012, Needham told Miller that she wished to return to work. Miller requested that Needham provide the VA with a return-to-work note from the psychiatric ward.

Needham again returned to her suicidal thoughts, and on October 11, 2012, Needham unsuccessfully attempted to commit suicide by overdosing on "massive" amounts of cocaine.[1] On October 12, 2012, Needham again attempted to commit suicide, this time by overdosing on Xanax. After she had started taking the Xanax, however, she received a call from her husband stating that he needed her debit card to go to the doctor. Needham accordingly drove to meet him in a grocery store parking lot. A witness who observed Needham's erratic driving called the police. The police followed Needham's car into the parking lot and, after assessing Needham's behavior, placed her under arrest for driving while intoxicated. A subsequent search led to the discovery of drug paraphernalia and crack cocaine base. Needham was issued a citation for driving under the influence and was later charged with possession of cocaine, possession of drug paraphernalia, and with having more than one driver's license. Needham pled no contest to a misdemeanor charge of cocaine possession.

On October 15, 2012, Needham sent the VA a letter from Dr. Baker stating that she could return to work on October 17th. On October 19th, Needham left Miller a message asking when she could return to work. Miller and Tena Fisher, a member of Lovell's Human Resources Department, returned Needham's call and informed her that they were aware of her arrest and that she was being

---

[1] The VA admits that this was Needham's deposition testimony but, without citation, denies the accuracy of the substance of her testimony (i.e. the fact that she was suicidal and that her drug use occurred as part of an attempt to commit suicide). It is beyond well established that the denial of a fact contained in a Rule 56.1 statement, absent evidence supporting that denial, is meaningless.

placed on an authorized absence pending an investigation of her conduct. A dispute of material fact exists as to what options Miller and Fisher gave Needham at that point. Needham claims that she was told that she could resign or she would be fired. The VA, however, contends that Needham was told that she could resign or wait for the Board's decision following the investigation.

The VA requested that Needham undergo a psychological examination at the Lovell Health Care Center to assess her fitness for duty. The examining psychiatrist, Dr. Mark Aghakhan, concluded that Needham satisfied the diagnostic criteria for major depressive disorder and pathological gambling, that she was "not ready to resume work at the present time," and that if Needham continued treatment she would be able to return to work within two or three months. On January 8, 2013, the VA issued Needham a notice of proposed discharge for engaging in off-duty conduct unbecoming a registered nurse. Needham responded to this notice and stated that she was participating in an aftercare program and that she was willing to enter into a last chance agreement and to submit to random drug tests. Dr. Baker, in turn, authored a letter on January 17, 2013, stating that Needham was ready to return to work without restrictions.

Patrick Sullivan, Lovell's director, met with Needham and decided to rescind the notice of termination if Needham executed a last chance agreement. The last chance agreement provided, in pertinent part, that Needham's discharge would be held in abeyance for three years if she had satisfactory performance and attendance, participated in Wheaton Franciscan Health Care's Mental Health and Addiction Program and attended all scheduled counseling, and participated in random drug testing. The agreement further provided that failure to meet any of the criteria of the agreement during the three year period would result in immediate discharge and that the agreement waived Needham's right to appeal her termination.

Needham's union representative objected to the agreements duration, the performance and attendance requirements, and the waiver of appeal rights, but the VA refused to modify those

provisions. The union representative asked that the VA reconsider the matter, but also expressly stated that they were "not willing to waive Ms. Needham's appeals right for the future." Needham believed that the negotiations regarding the last-chance agreement were ongoing, but on March 14, 2013, the VA issued Needham a discharge letter, effective March 17, 2013.

The discharge letter stated that Needham's discharge was based on off duty conduct unbecoming a registered nurse. The decision noted that, as a nurse, Needham knew that possession of cocaine and driving under the influence were unethical and illegal. It also stated that her "recent behaviors and off-duty conduct has caused management to lose trust and confidence in her ability to perform her duties as a Registered Nurse in a manner with the policies, procedures, and protocols that promote the high standards of patient care." Needham was accordingly terminated, and subsequently filed the present action.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

Needham claims that the VA discriminated against her when it terminated her employment. In order to survive summary judgment on this claim, Needham must show (1) that she was a qualified individual; (2) that she had a disability as defined in the act; and (3) that the VA discriminated against her based on that disability. *Jaros v. Illinois Dep't of Corrs.*, 684 F.3d 667, 672 (7th Cir. 2012); 29 U.S.C. § 794(a).

Here, it is undisputed that Needham's Major Depressive Disorder constituted a disability. An individual with a disability is qualified if she can "perform the essential functions of the employment position that such individual holds" with or without a reasonable accommodation. 42 U.S.C. § 12111(8). The VA contends that Needham is not qualified because her drug use and gambling violated the law and the VA's policies.

Needham's drug use, as an act in itself, does not preclude her from being a qualified individual. As a general principle, "a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). That provision, however, does not apply when the individual is "participating in a supervised rehabilitation program and is no longer engaging in such use." 42 U.S.C. § 12114(b)(2). There is, at a minimum, a genuine dispute of material fact as to whether Needham was participating in a rehabilitation program at the time of her termination, and it is undisputed that she was no longer engaging in any drug use at that time. Taking this evidence in Needham's favor, the VA would only be permitted to hold Needham to the same qualification standards that are applicable to all other employees. 42 U.S.C. § 11214(c)(4).

The VA contends that Needham was not a qualified individual at the time of her termination because she violated a workplace policy. It has long been recognized that violation of a workplace rule may disqualify an individual. In *Palmer v. Circuit Court of Cook County*, for instance, the Seventh Circuit held that an employee who threatened to kill a colleague was unqualified because "[t]he Act

only protects "qualified" employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one." *Palmer v. Circuit Court of Cook County, Ill.*, 117 F.3d 351, 352 (7th Cir. 1997). The VA, however, seemingly asserts that Needham's violation of workplace rules is automatically disqualifying, without any need for factual inquiry into the nature of the violation or its impact on her ability to perform her job. This interpretation, although seemingly supported by a few recent cases, results from a misinterpretation of those opinions and is not supported by the weight of the precedent.

In *Budde v. Kane County Forest Preserve*, a police chief suffering from alcoholism sued after he was terminated following an arrest for driving under the influence. The Seventh Circuit, in affirming the district court's grant of summary judgment, wrote that:

> In order to prevail on his discrimination claim, Budde must first establish that he is a "qualified individual with a disability." *Basith v. Cook County,* 241 F.3d 919, 927 (7th Cir.2001). A "qualified individual with a disability" is someone who (1) satisfies the requisite skill, experience, education, and other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation. 29 C.F.R. § 1630.2(m). Budde's claim fails because, as a result of his misconduct, he cannot perform essential job functions in that he (1) failed to comply with universal workplace rules and (2) could not perform an essential job function in that he was unable to operate a motor vehicle due to his suspended driver's license.
>
> Violation of a workplace rule, even if it is caused by a disability, is no defense to discipline up to and including termination. *Pernice v. City of Chicago,* 237 F.3d 783, 785 (7th Cir.2001). Where the misconduct at issue involves a plaintiff's off-duty criminal behavior, an employer is not required to wait for the outcome of a criminal adjudication and/or have proof beyond a reasonable doubt before it can impose discipline. *Id.* at 784.
>
> Based on the record, we find that there were sufficient facts for Meyers to believe that Budde's misconduct constituted a violation of the District's SOPs, which warranted his termination. He violated both the SOP that prohibited officers from being publicly intoxicated, as well as the SOP that prohibited employees from violating public laws. As police chief, the District could reasonably expect Budde to refrain from engaging in unlawful activities. We agree with the district court that in choosing to drive while intoxicated and causing a crash that sent two people to the hospital, he failed to comply with the workplace rules, and Budde was no longer qualified to perform his job as police chief.

*Budde v. Kane County Forest Preserve*, 597 F.3d 860, 862–63 (7th Cir. 2010). The VA treats the Seventh Circuit's determination that Budde's violation of workplace rules rendered him unqualified as a new standard of law. The district court in *Ortiz v. Board of Education* appears to have believed the same

when it held, without analysis or discussion beyond a citation to *Budde*, that a plaintiff was not qualified based solely on the fact that he violated workplace rules. *Ortiz v. Bd. of Educ. of Chicago*, No. 11 C 9228, 2014 WL 3502640, at *3 (N.D. Ill. July 14, 2014) (Marovich, J.).

This Court, however, does not believe that the Seventh Circuit intended to establish that any violation of a workplace rule constitutes disqualifying conduct as a matter of law. Such a rule would be illogical given that many workplace rules are trivial, aspirational, or otherwise unconnected to the functional requirements of the job at hand.[2] And the Seventh Circuit's opinion in *Budde* is devoid of any citation supporting such a rule or any discussion to explain or justify the creation of such a rule. Instead, the Seventh Circuit held that Budde was unqualified after a factual inquiry, albeit a cursory one, into the responsibilities of his role and the impact that his violation of workplace rules would have on his ability to perform his duties. This Court therefore holds that Needham's violation of the Code of Conduct does not bar her, as a matter of law, from being a qualified individual. Rather, it remains the case that a factual inquiry is required to determine whether Needham could perform the essential functions of her position notwithstanding her violation of the code of conduct. The VA, however, fails to meaningfully argue that the evidence in this case establishes that Needham was not a qualified individual in light of the particularized facts of this case. Nor does this Court see an obvious relationship between Needham's off duty conduct and her ability to execute her responsibilities while on duty. Accordingly, this Court holds that a dispute of material fact exists as to whether Needham was a qualified individual with a disability.[3]

---

[2] In this case, for instance, the Code of conduct at issue required Needham to "value each person and treat each other with dignity," to maintain excellence in "Personal and Facility Appearance", and to "Communicate Effectively Telephone, Mail and Hallway etiquette." Clearly, violations of these vague and indefinite rules do not automatically render an individual unqualified.

[3] The VA alternatively asserted that Needham was not a qualified individual with a disability based on her drug use and gambling. Neither of these acts was a stated basis for Needham's discharge, however, and the defendants point to nothing suggesting that they were aware of these activities at the time of Needham's discharge. Needham's gambling and drug use are therefore irrelevant to her discharge. *See Cleveland v. Prairie State College*, 208 F. Supp. 2d 967, 977 (N.D. Ill. 2002) (finding a dispute of material fact as to whether an employee was qualified based, in part, on questions as to whether the disqualifying information was known to the employer prior to the decision not to rehire the employee).

Having concluded that Needham was a qualified individual with a disability, this Court turns to the question of whether Needham was terminated based on that disability. In order for Needham to survive summary judgment, there must be evidence before this Court which would permit a reasonable factfinder to conclude that her disability caused her discharge. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) ("[A] plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability; proof of mixed motives will not suffice.").

The VA argues that Needham was terminated based on the fact that she was driving under the influence and in possession of cocaine. This is supported by the Notice of Proposed Discharge, which describes the conduct unbecoming a nurse as "possession of 'crack' cocaine and crack pipe." This assessment is not supported, however, by other communications from the VA. The October 22, 2012 Notice of Authorized Absence states that Needham was placed on an authorized absence "pending an Agency review of the incidents of October 6, 2012 and your subsequent behaviors." October 6, 2012 was the date that Needham was involuntarily hospitalized for suicidal statements, not the date of her arrest. The VA does not dispute that the October 6, 2012 incident was a result of Needham's disabilities, and does not contend that the events of October 6, 2012 constituted misconduct under the Code of Conduct.

Needham's Psychological Fitness for Duty Evaluation similarly attributed her referral to the fact that:

> On October 6, 2012 Ms. Needham was observed crying at work and having verbalized to an ED staff member that she had been depressed and had a plan to die in an automotive accident. She also mentioned to her supervisor that she had a plan to terminate her life as a way to resolve personal issues. With her consent, a psychiatric hospitalization was necessitated.

When Needham was finally terminated, the supporting statement of reasons identified the offense as driving under the influence and possession of cocaine and drug paraphernalia. However, in describing "the effect of the offense upon the employee's ability to perform at a satisfactory level," the statement set forth that "Ms. Needham has exhibited behavior in the past that has brought in the question of her fitness for duty. Her latest actions were displayed on October 6, 2012 resulted in her being examined and has undergone drug-testing." It also concluded that Needham's "conduct *on and off-duty* has severely impacted the employee/employer relationship and ultimately has a negative effect on the efficient operation of the service. Therefore, Ms. Needham's removal will promote the efficiency of the service." (Emphasis added).

The VA's statements thus establish that Needham's October 6 statements that she was suicidal and subsequent commitment to a psychiatric hospital were a factor in Needham's termination. More importantly, even though the VA was already aware of Needham's arrest, Needham's placement on authorized leave and referral for a fitness for duty evaluation were both premised solely on her conduct on October 6th. Thus, the evidence strongly suggests that it was the October 6th incident, and not Needham's subsequent arrest, that initiated the disciplinary process that ultimately led to her termination. The decision to terminate Needham, moreover, came shortly after her formal diagnosis and required accommodations were made known to the VA. *See Schwab v. N. Ill. Med. Ctr.,* 42 F. Supp. 3d 870, 886 (N.D. Ill. 2014) (recognizing that a dispute of material fact may be created by temporal proximity between an employer's discovery of an employee's disability and a subsequent adverse employment action). To be sure, the VA has identified a valid basis for terminating Needham; her violation of the Code of Conduct would have been an adequate ground for her termination. *See Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001) ("It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability."). The

timing of Needham's termination and initial use of the October 6th incident as justification for Needham's involuntary leave and fitness evaluation, however, raise a genuine dispute as to whether her termination resulted from her violation of the Code of Conduct or from her disability and the inconvenience that it posed.

Needham also claims that the VA failed to accommodate her disability in violation of the Rehabilitation Act of 1973. 29 U.S.C. §794(a). In order to survive summary judgment on this claim, Needham must introduce evidence establishing that (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate that disability. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *see also Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004) (recognizing that Rehabilitation Act claims are governed under the standards applicable to the Americans with Disabilities Act of 1990 ("ADA")).

Needham admits that she did not request an accommodation until after her arrest. The evidence and argument suggest that Needham required, and knew that she required, accommodations prior to the events now at issue, but that she declined to request those accommodations because she was afraid to ask for further or accommodations or to become a bother. Fault for creating a situation where this was the case rests on the employer, but that does not change the fact that, given Needham's silence, the VA was not officially on notice of anything that it could or should have done to accommodate Needham's disabilities.[4] After-the-fact requests for accommodation do not excuse an employee from discipline for prior misconduct. *Tate v. Ancell*, 551 F. App'x 877, 886 (7th Cir. 2014). Here, however, there is a dispute of material fact as to whether Needham was in fact disciplined for prior misconduct. Accordingly, a dispute of material fact exists as to whether the VA failed to provide a reasonable accommodation by terminating

---

[4] Although Needham never officially requested an accommodation, the VA was certainly on notice of her need for one after it had her committed to a psychiatric hospital, and there is some evidence to suggest that the VA was likely on notice before that.

Needham without taking her request for an accommodation into account. *Cf. Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793, 799 (N.D. Ill. 2011) (Lefkow, J.) (finding similar factual allegations sufficient to state a claim for failure to accommodate).

**Conclusion**

For the foregoing reasons, the VA's motion for summary judgment is denied.


IT IS SO ORDERED.

Date:    November 8, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge